IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF        ) | |
| THE COMPLAINT           ) | |
|                         ) | |
| OF                      ) | |
|                         ) | |
| ATLANTIC MARINE, PROPERTY   ) | |
| HOLDING CO., INC., and ATLANTIC   ) | |
| MARINE, INC., Owners of the  ) | CIVIL ACTION NO. 06-0100-CG-B |
| Barge, MOBILE HEAVY LIFTER;  ) | |
| BENDER SHIPBUILDING & REPAIR CO.,) | |
| INC., Charterer and Disponent Owner of   ) | |
| the Barge, MOBILE HEAVY LIFTER,   ) | |
| ABS ID NO. 7700124, for exoneration from   ) | |
| or limitation of liability.   ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the court on the motion of Atlantic Marine Property Holding Co., Inc., ("Atlantic Marine Property") for summary judgment (Doc. 334), opposition filed by Pemex Exploracion y Produccion ("PEP") (Doc. 340), PEP's motion to strike the affidavit of William C. Quinn (Doc. 342), joinders in PEP's opposition filed by State of Alabama Department of Transportation, Alabama State Port Authority, Plains Marketing, LP, Arch Specialty Insurance Company and Interested Lloyds Underwriters, Company Market Participant, BP Products North America Inc., Grupo Nacional Provincial, S.A., and KOT Insurance Company ("Non-PEP claimants") (Docs 344, 355), and Atlantic Marine Property's reply (Doc. 363). The court finds that Mr. Quinn's supplemental affidavit cures the defects in his original affidavit and, therefore, that the motion to strike is denied. The court also finds that there is no evidence that Atlantic Marine Property was negligent or contributed in any way to the subject incident and that Atlantic Marine Property had surrendered all possession and control such that it was no longer charged with the duties and liabilities that arise out of ownership. Therefore, Atlantic Marine Property's

motion for summary judgment is due to be granted.

## BACKGROUND & FACTS

This lawsuit arises out of the incident in which the barge MOBILE HEAVY LIFTER ("MHL"), and the PSS CHEMUL which was onboard the MHL, broke loose from their moorings on August 29, 2005 during Hurricane Katrina.  The MHL and /or CHEMUL struck a ship and other structures and piers along the west bank of the Mobile River and became lodged beneath the Cochrane-Africatown Bridge.   Atlantic Marine Property and Atlantic Marine, Inc., as the owners of the MHL, and  Bender Shipbuilding & Repair Company, Inc. ("Bender") , as the alleged bareboat charterer of the MHL, seek exoneration from or limitation of liability in connection with the breakaway of the MHL and CHEMUL.  Several entities have filed claims for property damage allegedly resulting from the breakaway.

Atlantic Marine Property moves for summary judgment on the basis that it did not have custody or control of the MHL at any time, including August 2005, and that no party has offered evidence contending or submitted a claim against Atlantic Marine Property for negligence or unseaworthiness.  In support, Atlantic Marine Property submitted the affidavit of William C. Quinn who states that Atlantic Marine Property was established strictly to own and hold property; it never conducted marine operations or any other kind of operations; except for board members, it had no employees; and Atlantic Marine, Inc. was given complete custody and control of the MHL and paid rent to Atlantic Marine Property beginning in September 2004 through and including August 2005. (Quinn Affidavit).   Atlantic Marine Property also submits the affidavit of Robert C. James, the Dockmaster, who worked for Atlantic Marine, Inc. (James

Affidavit). James states that he had custody and control of the MHL beginning in March 2004 and further that in November 2004, Atlantic Marine, Inc. delivered the MHL with the PSS CHEMUL onboard to Bender pursuant to a charter between Atlantic Marine, Inc. and Bender. (Id.). James states that when the MHL was delivered to Bender, it was in good repair and fit for the specific task of drydocking the PSS CHEMUL. (Id.).

PEP[1] opposes summary judgment on the basis that Atlantic Marine Property has offered insufficient evidence that Atlantic Marine Property had no legal control over the MHL. PEP moves to strike the affidavit of William C. Quinn, because it is not based on personal knowledge and does not show that Quinn is competent to testify. Except for the statement that he is over the age of 19 and has personal knowledge of the facts stated therein, Quinn is not identified in the affidavit. (Id.) The affidavit does not indicate Quinn's address, occupation, or title. (Id.). PEP argues that "[f]or all we know, he is some random person off the street who has signed an affidavit." (Doc. 340, p. 2). However, Atlantic Marine Property has now submitted a supplemental affidavit of Mr. Quinn which clarifies that he has been employed with Atlantic Marine Property since March 1995. (Quinn Affidavit II - Doc. 360). Quinn states that he is the Controller for Atlantic Marine Florida, Atlantic Marine Mayport, Classic Act, Atlantic Marine Property Holding Company and FGI Property Holding Company. (Id.). Quinn has been the Controller of Atlantic Marine Property or its predecessors since its inception in 2003. (Id.).

Atlantic Marine Property has also submitted a copy of the charter contract between Atlantic Marine, Inc. and Bender and the testimony of Bender's Timothy Scheib regarding the

---

[1] The non-PEP claimants join in PEP's opposition to summary judgment but have not submitted additional briefs or evidence. For simplicity, the court will refer to the assertions in PEP's brief as those of PEP, although the court is aware that the non-PEP claimants join in them.

work to be done on the CHEMUL by Bender.   Atlantic Marine Property also submitted the testimony of several expert witnesses.  PEP expert David Scruton of 3-D Marine USA, Inc. reports that Bender "is totally responsible for the incident and any and all damages to the PSS CHEMUL, the barge MOBILE HEAVY LIFTER and all other equipment and property of third parties in question." (Scruton Deposition pp. 210-211).  PEP expert Lionel Keith Reay, also of 3-D Marine USA, Inc. also reports that Bender was totally responsible and states that he has no criticism of Atlantic Marine or Atlantic Marine Property. (Reay Deposition pp. 220-221).  PEP expert Kevin C. Highfield of London Offshore Consultants testified that, in his opinion, "Bender had the responsibility for the barge and the Chemul and it was up to them to make arrangements to do what they had to do." (Highfield Deposition pp. 242-243).  PEP expert Andrew Johnstone, also of London Offshore Consultants, testified that his report contained no criticism of Atlantic Marine or Atlantic Marine Property. (Johnstone Deposition p. 176). Non PEP Claimants' expert John Flory testified that he had no intention of offering any opinions as to Atlantic Marine in his report or supplemental report. (Flory Deposition p. 241).  Lastly, Non PEP Claimants' expert Joe Kastner testified that he had no criticism of Atlantic Marine or Atlantic Marine Property. (Kastner Deposition p. 180).

## LEGAL ANALYSIS

### I. Motion to Strike Affidavit of William C. Quinn

The court finds that Mr. Quinn's supplemental affidavit cures any defect in his original affidavit.  Moreover, although PEP contends Quinn is an unknown person, he was listed in Atlantic Marine's January 2007 supplemental interrogatory responses as the person who could

identify the company entries concerning the transfers of title, lease or charter, and rental payments between Atlantic Marine Property and other Atlantic Marine entities. (See Doc. 358, Ex. K, pp. 13-15). The court notes that although PEP had notice that Quinn reportedly had knowledge of the transactions between Atlantic Marine Property and other Atlantic Marine entities, there was still no evidence before this court demonstrating who Quinn was or how he reportedly knew the facts contained in his affidavit. Thus, it was appropriate for PEP to move to strike the affidavit. Nonetheless, Quinn's supplemental affidavit has cured the defects in the original affidavit and, therefore, PEP's motion to strike the affidavit of William C. Quinn (Doc. 342) is **DENIED**.

## II. Motion for Summary Judgment

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56©) provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations

omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001).  In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999).  "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56©), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)).  Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment."  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the

non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Discussion**

Atlantic Marine Property contends that it did not have custody and control of the MHL and did not have any responsibilities of a vessel owner. Although there was no written charter between Atlantic Marine Property and Atlantic Marine, Inc., all of the evidence indicates that Atlantic Marine Property had transferred custody and control of the MHL to Atlantic Marine through a bareboat or demise charter. Atlantic Marine Property cites case law which states that "a charter party may be implied from circumstances concerning the actual possession and use of the vessel" and that such agreements "need not be in writing." See St. Paul Fire and Marine Ins. Co. v. Vest Transportation Co., 666 F.2d 932, 939 (5th Cir. 1982). If the owner of a vessel gives full custody and control of the vessel to another, there is a bareboat or demise charter. Forrester v. Ocean Marine Indemnity Co., 11 F.3d 1213, 1215 (5th Cir. 1993). When the owner of a vessel enters into a demise charter, he surrenders all possession and control and "is no longer charged with the duties and liabilities that arise out of its ownership." Kerr-McGee Corp. v. Law, 479 F.2d 61, 63 (4th Cir. 1973).

PEP does not appear to dispute Atlantic Marine Property's statements of law, but instead takes aim at the adequacy of support offered for the alleged transfer of the MHL from Atlantic Marine Property to Atlantic Marine, Inc. However, PEP has offered no evidence to the contrary and, as discussed above, there is no longer any defect with Mr. Quinn's affidavit. Quinn's affidavits provide evidence that Atlantic Marine Property had given up all custody and control to Atlantic Marine, Inc. Although PEP states that there are substantial questions concerning Atlantic Marine Property's ownership and control, PEP has not offered sufficient evidence to raise a material issue of fact concerning this issue.[2]

---

[2] The only facts raised by PEP on this issue are that there is no written charter or similar documentation and the transfer was recorded in corporate accounts on August 5, 2005, but was

There is no evidence that Atlantic Marine Property played any role in the preparation of the MHL and the PSS CHEMUL for Hurricane Katrina and the evidence indicates that when the MHL was delivered to Bender, it was in good repair and fit for the specific task of drydocking the PSS CHEMUL. Since there is no evidence that Atlantic Marine Property was negligent or contributed in any way to the accident and Atlantic Marine Property had surrendered all possession and control such that it was no longer charged with the duties and liabilities that arise out of ownership, the court finds that summary judgment is due to be **GRANTED** in its favor.

## CONCLUSION

For the reasons stated above, the motion of Pemex Exploracion y Produccion to strike the affidavit of William C. Quinn (Doc. 342) is **DENIED** and the motion of Atlantic Marine Property Holding Co., Inc., for summary judgment (Doc. 334) is **GRANTED**. Atlantic Marine Property Holding Co., Inc., is **EXONERATED** from any and all liability arising out of the subject incident, and all claims against it are **DISMISSED** with prejudice.

**DONE** and **ORDERED** this 6th day of August, 2008.

    /s/ Callie V. S. Granade
    CHIEF UNITED STATES DISTRICT JUDGE

---

back-dated to April 28, 2004. PEP also asserts that James' affidavit is insufficient because he was not an officer or director of the Atlantic Marine companies and therefore his affidavit cannot demonstrate who had the requisite legal control over the MHL. However, these facts do not tend to show that there was no charter or evince any custody or control by Atlantic Marine Property during or immediately prior to the breakaway on August 29, 2005. The evidence does not counter Quinn's statements that Atlantic Marine Property had no custody or control. PEP points to the inadequacies of Quinn's affidavits and states that "[w]ithout the assertions in the Quinn affidavit, Atlantic Marine Property has not established the factual basis which could entitle it to a summary judgment in its favor." (Doc. 340, p. 3). As the court has found the defects in Quinn's affidavit have been cured, PEP's argument concerning the lack of factual basis is unavailing.