IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| IN THE MATTER OF )<br>THE COMPLAINT )<br>)<br>OF )<br>)<br>ATLANTIC MARINE, PROPERTY )<br>HOLDING CO., INC., and ATLANTIC )<br>MARINE, INC., Owners of the )<br>Barge, MOBILE HEAVY LIFTER; )<br>BENDER SHIPBUILDING & REPAIR CO., )<br>INC., Charterer and Disponent Owner of )<br>the Barge, MOBILE HEAVY LIFTER, )<br>ABS ID NO. 7700124, for exoneration from )<br>or limitation of liability. ) | CIVIL ACTION NO. 06-0100-CG-B |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on the motion of Pemex Exploracion y Produccion ("PEP") for partial summary judgment (Doc. 183), opposition thereto of Bender Shipbuilding & Repair Co., Inc. ("Bender") (Doc. 189), and PEP's reply (Doc. 192). The court finds that the agreements which PEP alleges were breached were "personal" in nature and as such are not subject to limitation under the Limitations Act. Therefore, PEP's motion for partial summary judgment is due to be **GRANTED**.

## FACTS

This lawsuit arises out of the breakaway of a barge, the MOBILE HEAVY LIFTER ("MHL"), and the PSS CHEMUL, which was onboard the MHL when it broke loose from its moorings on August 29, 2005, during Hurricane Katrina. The MHL and /or CHEMUL struck a ship and other structures and piers along the west bank of the Mobile River and became lodged beneath the Cochrane-Africatown Bridge. Atlantic Marine Property and Atlantic Marine, Inc., as the owners of the MHL, and Bender, as the alleged bareboat charterer of the MHL, seek exoneration from or limitation of liability in connection with the breakaway of the MHL and

CHEMUL.  Several entities have filed claims for property damage allegedly resulting from the breakaway, including PEP as the owner of the PSS CHEMUL.

On July 16, 2004, PEP entered into a written contract with Bender for the "[r]ehabilitation, maintenance and modernization of The CHEMUL semi-submersible platform in dry dock." (Doc. 182, Ex. A - Contract No. 418234857).  On February 21, 2005, PEP entered into a second contract with Bender for the "[s]ervice of reconditioning and modernization of power management, alarm and government systems [ ] and the adaptation of the original area of the Chemul semi-submergible platform." (Doc. 182, Ex. B - Contract No. 418235819).  One of the provisions in the first contract requires that Bender "keep the platform protected during its time in dry dock, under safe conditions, preventing any risk of physical damage to said platform. (Ex. A. at Clause Seventh).  A provision in the second contract similarly requires that Bender "[k]eep the platform in safe conditions during its time on the dock, preventing any risk of physical damage thereto."  (Ex. B at Clause Sixteen).   The first contract also required that Bender insure the CHEMUL with a policy that establishes PEP as a third-party and preferred beneficiary of payment in case of an accident and that the insurance remain in effect during the term of the contract and its extensions. (Ex. A at Clause Ninth(B)).   In the event of any loss, Bender's insurance was to "act as the primary insurance." (Id.).  The first contract also contains a provision which provides that the "failure to fulfill obligations due to force majeure or acts of God releases the obligated party from responsibility." (Ex. A at Clause Fourteenth).  The second contract also contains a similar force majeure provision which states that "[n]either of the parties shall be liable before the other party for any causes derived from any ACT OF GOD OR FORCE MAJEURE MAYOR." (Ex. B at Clause Twenty-One).

**LEGAL ANALYSIS**

**A. Summary Judgment Standard**

Federal Rule of Civil Procedure 56© provides that summary judgment shall be granted: "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, at 249-250. (internal citations omitted).

The basic issue before the Court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir.1999). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." Miranda v. B&B Cash Grocery Store, Inc., 975 F.2d 1518, 1534 (11th Cir. 1992) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(c), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Company, 32 F.3d 520, 524 (11th Cir.1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The non-moving party "may not rest on the mere allegations or denials of the [non-moving] party's pleading, but .... must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e)  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 at 587 (1986) (internal quotation and citation omitted).

**B. Discussion**

PEP contends that its contracts with Bender were personal contracts and, as such, are not subject to limitation under the Limitations Act. Bender asserts that PEP's contention is faulty for three reasons: 1) the contractual provisions release Bender from damages resulting from force majeure or act of god, 2) to avoid limitation through the personal contract doctrine the contract must be personal and it must be personally breached by the limitation plaintiff, and 3) PEP has failed to present evidence that Bender breached its obligation to insure the CHEMUL.

### 1. Force Majeure or Act of God

Bender contends that PEP has not shown that the alleged damage did not result from

force majeure. The contracts at issue contain provisions which release Bender from fulfilling its obligations if prevented from doing so due to force majeure or acts of God. However, as pointed out by PEP, the motion before the court does not seek a determination as to whether Bender is liable to PEP for the alleged damages. The motion only seeks a determination that PEP's claim does not fall within the Limitation Act. In other words, PEP's motion seeks a determination as to whether PEP must look only to the limitation fund to satisfy any successful judgment it might obtain against Bender for damages resulting from the breakaway. Liability has not previously been determined and neither PEP nor Bender, has submitted sufficient evidence for this court to make that determination here. As such, the court finds Bender's argument in that regard is misplaced.

### 2. Personal Contract and Breach

When properly invoked, the personal contract doctrine "deprives a shipowner of the benefits of limitation and exposes him to the full burden of liability his actions produced. Signal Oil & Gas Company v. Barge W-701, 654 F.2d 1164, 1168 (5th Cir. 1981).[1] "In application this is an equitable doctrine based on the proposition that a shipowner should not be able to promise an undertaking or performance that was within his personal control and then turn around and limit liability when his performance was faulty." Mediterranean Shipping Co. S.A. Geneva v. POL-Atlantic, 229 F.3d 397, 403 (2d Cir. 2000) (citing 2 THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 15-8, at 318 and Richardson v. Harmon, 222 U.S. 96, 106, 32 S.Ct. 27, 56 L.Ed. 110 (1911)). "[T]he test of the personal contract exception is not merely that the shipowner entered into the contract personally, but is whether the obligation (and therefore the breach) was one the shipowner was personally bound to perform, rather than one contemplated he would delegate to his agents and servants." Id. (citing 2 SCHOENBAUM, supra, § 15-8, at 318). The parties dispute whether the contracts and alleged breaches in the instant case are "personal." "It

---

[1] Decisions of the Former Fifth Circuit filed prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc). The Signal Oil decision is dated September 4, 1981.

is by no means clear exactly what a 'personal contract' is, but it is clear that not all contracts are 'personal', even through entered into personally by the shipowner." <u>Signal Oil</u>, 654 F.2d at 1168. PEP argues that the reported "bible" of admiralty law states the following:

> Although the point has never been authoritatively determined in a modern case, it is probable that all repair and supply contracts are "personal", home port or foreign port, lien or no lien.

GILMORE AND BLACK, THE LAW OF ADMIRALTY 900 (2d ed. 1975); <u>see</u> also <u>American Warehouse & Trading Co. v. Davison Lumber Co.</u>, 240 F. 126, 128 (2d Cir. 1917) ("in general, repairs made in the home port by the owners, or by their authorized agent, are treated as the personal debts of the owners, and cannot be discharged by a surrender of the vessel."). Thus, PEP argues that the contracts in question were personal contracts since they were unquestionably for repairs. Bender, on the other hand argues that PEP has not shown that the alleged breach was personal because it has not demonstrated that the acts or omissions which caused the accident were within the privity or knowledge of the shipowner. In support of its contention, Bender cites <u>Signal Oil</u> in which the Fifth Circuit ruled that the personal contracts doctrine did not apply to claims asserted in that case for unseaworthiness, breach of an implied warranty to perform services in a workmanlike manner and breach of warranty to provide "effectual" insurance coverage. <u>Signal Oil</u>, 654 F.2d at 1168, 1171. However, a thorough review of <u>Signal Oil</u> reveals that the Court did not find that the contracts were not personal, but merely determined that the contracts had not been breached. <u>Id.</u> at 1169-1171. In <u>Signal Oil</u>, the liability phase of the case had already been concluded by the trial judge and on appeal. The law of the case mandated that the sole cause of the incident in question was attributable to an entity that was not a party to the contract at issue and that the barge in question was a seaworthy vessel. <u>Id.</u> at 1169-1170. Furthermore, the court found there was no evidence to support the alleged claims of unseaworthiness and unworkmanlike service. <u>Id.</u> at 1170. The court also determined that although the indemnity claim did not hinge on liability issues which had previously been determined, the insurance provided was "effectual" and thus, the third claimed breach was not

6

actionable. Id. at 1170-1171.

In the instant case, liability has not been determined and there is insufficient evidence before the court on this summary judgment motion for the court to determine whether Bender breached the contract provisions in question. Thus, the court does not find the conclusions in Signal Oil to be applicable to the instant case.

The question remains, whether the alleged breaches are "personal." As previously mentioned, PEP cites authority supporting the conclusion that repair contracts are "personal." However, the breaches claimed by PEP in this action are not of the actual agreement to repair, but of Bender's agreement to 1) "keep the platform protected during its time in dry dock, under safe conditions, preventing any risk of physical damage to said platform," and 2) to insure the CHEMUL as specified in the contracts. Courts addressing similar alleged breaches have found them to be personal. For example, the Eastern District of Louisiana found as follows:

> When a shipowner personally warrants the seaworthiness of a vessel, such warranty is a personal contract and is not subject to the limitation of the Limitation Act. See Mediterranean Shipping, 229 F.3d at 403; Pendleton v. Benner Line, 246 U.S. 353, 355, 38 S.Ct. 330, 62 L.Ed. 770 (1918). Likewise, contracts for indemnity and contribution are personal as are insurance agreements. See Kattleman [v. Otis Engineerig Corp.], 701 F.Supp [560] at 563 [(E.D. La. 1988)]; In re M/V Thunder USA, 1993 WL 121265 (E.D.La.1993).

Trico Marine Assets, Inc. v. Diamond B Marine Services, Inc., 2001 WL 946362, *3 (E.D.La. Aug. 21, 2001). The Second Circuit also found that "[w]hen a vessel owner personally warrants the seaworthiness of the vessel, the owner has made a personal contract and is not entitled to limitation under the Act." Mediterranean Shipping Co., 229 F.3d at 403 (2d Cir. 2000) (citing Pendleton, 246 U.S. at 355-356 (owners who warranted seaworthiness of vessel to charterer in charter party could not subsequently limit liability under the Act because "the [owner] by his own act knowingly made himself a party to an express undertaking for the seaworthiness of the ship"); Cullen Fuel Co. v. W.E. Hedger, Inc., 290 U.S. 82, 87, 54 S.Ct. 10, 78 L.Ed. 189 (1933) (same); In re Reliance Marine Transp. & Const. Corp. (The M.J. Woods), 206 F.2d 240, 243 (2d Cir. 1953) (same); 2 SCHOENBAUM, supra, § 15-8, at 318 ("[T]he shipowner who enters into a

charter for his vessel and expressly or impliedly warrants its seaworthiness cannot limit as to the claim of a charterer that the vessel sank because the vessel was unseaworthy at the beginning of the voyage.")). The court agrees with the conclusions of the above cited courts and finds that the claimed breaches in those cases are analogous to the breaches alleged by PEP here. While the personal warranties made here by Bender were not for the seaworthiness of a vessel, they were agreements to keep the platform protected and safe, and to provide insurance. These agreements that were allegedly breached were agreements Bender was personally bound to perform.

### 3. Lack of Evidence of Breach

Bender claims that PEP has failed to present evidence with its motion that Bender breached its obligation to insure the CHEMUL. However, as discussed above, PEP's motion is for partial summary judgment and only seeks a determination as to whether PEP's claims against Bender fall within the Limitation Act. The court makes no determination concerning Bender's actual liability for such claims. The court's conclusion is limited to the determination that if PEP is successful on its claims, recovery will not be restricted by the limitation fund. On the motion before the court, there remains a material issue of fact as to whether Bender breached its agreement to keep the drydock safe and to insure the CHEMUL as specified. Since those issues are not before the court on this motion, they do not prevent the grant of partial summary judgment in PEP's favor.

## CONCLUSION

For the reasons stated above, the motion of Pemex Exploracion y Produccion for partial summary judgment (Doc. 183), is **GRANTED**.

**DONE** and **ORDERED** this 7th day of August, 2008.

  /s/ Callie V. S. Granade  
CHIEF UNITED STATES DISTRICT JUDGE